## COOK v. STATE.

No. A-11480. Feb. 27, 1952.

(241 P. 2d 411.)

Judd L. Black, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. On November 27, 1949, Mathis Cook shot and killed one Julius Smith by means of a .38 Caliber revolver. Thereafter the defendant, Mathis Cook, was charged by an information filed in the district court of Oklahoma county with the crime of murder; was tried; convicted of manslaughter in the first degree; and sentenced to serve 20 years imprisonment in the penitentiary; and has appealed.

There are many assignments of error set forth in the brief of defendant. We have carefully considered each of them and have come to the conclusion that only one of such assignments in error has substantial merit.

It is contended that the defendant was convicted by unfair, illegal and prejudicial means in that improper documentary and hearsay evidence was illegally furnished by the jury and were given consideration by it after they had retired for deliberation.

Although the sufficiency of the evidence to sustain the conviction is not questioned, a short summary of the evidence is given in order to better understand the issue presented by this specification of error.

The proof of the state showed that the deceased was shot at the home of defendant about 11:00 a. m. on Sunday, November 27, 1949. The defendant was about 66 years of age and was the Negro foreman in charge of Negro workers for the Concho Construction Company. Among the Negroes which the defendant had employed was the deceased, Julius Smith, who was a much younger man than the defendant. About 7:00 a. m. on the date of the homicide the defendant met the deceased at a beer tavern. The defendant was hunting for the brother of deceased to inquire about a stove which the deceased said his brother owned. An argument ensued about some money allegedly owed by the deceased to defendant, during which the defendant told the deceased not to report for work the next day as he would not keep his word. During the conversation the deceased borrowed a dollar from defendant. Later that morning the deceased went to the home of defendant, where he was killed. The bullet from the gun of defendant struck deceased one and one-quarter inches to the left of the spine between the shoulder blades and in the back. The police were called and, upon their arrival at the home of defendant, found Julius Smith lying near the doorway. He was dead.

The defendant in his statement given to the officers admitted the killing and stated he did so after ordering the deceased to not enter his home.

There were many other witnesses for the state who testified that they saw the deceased the morning of the homicide and he seemed to be in a jovial disposition.

The wife of defendant testified that she was present at her home when the deceased was killed; that a few minutes before he was killed, her nephew, Herman Evans, came to their house and said, "Uncle Mathis, you had better watch that nigger Keghead, because he has done told that he was gonna get you." She also testified that the following day after the shooting occurred she found an open-bladed knife on the floor, which she delivered to her lawyer, and which the defendant identified as a knife held in the hands of the deceased at the time the fatal shot was fired. This witness was virtually blind and had been for many years.

The defendant testified in his own behalf that Herman Evans came to him and warned him that the deceased, Keghead Smith, had said he was going to cut his head, or split his head; that he then got his gun and laid it on the table; that a few minutes later, while he was lying down, he heard a voice call and he thought it was his nephew at the door; that he opened the door and the deceased attempted to step into his house; that defendant said, "Don't you come in here boy". He further said defendant had a knife in his hand and raised it up, and he reached back for the gun and fired.

The witnesses for the state made an overwhelming case of guilt of murder against the accused. On the other hand, if the testimony related by defendant and his wife was true, there was some justification for the taking of the life of deceased.

This brings us to the issue presented by the above assignment of error. Before the trial commenced, counsel for defendant moved for a continuance on the ground of the absence of the witness Herman Evans. The motion did not fully comply with the law, in that it did not show any reasonable likelihood that the presence of the witness would be obtained at any future time. The county attorney objected to a continuance and submitted to the court copies of two purported telegrams; one of them allegedly sent by the assistant county attorney to the sheriff of Madera county, California; and the other a copy of a telegram allegedly received by the assistant county attorney from the sheriff of Madera county, California. These telegrams are as follows:

"Telegram Received By Telephone
Oklahoma City, Oklahoma
1/21 1950 21 AM 9 48

142 DL PD Copy
County Sheriff
Madera County Madera Calif
Request You Please Locate Herman Evans, Negro, And Family To-day Mail Address Route 1 Box 82 Chowchilla, Your County. They Formerly Lived Southwest 3rd And Rose Sts Oklahoma City Ask Herman Evans, Lula Evans, Buddy Evans, Ruby Evans And Betty Evans What They Know About Killing of Julius Smith, Negro, By Mathis Cook, Negro, At 2603 Southwest Third St Oklahoma City November 29th 1949. Evans Family Not Believed Involved In Killing But May Possibly Be Witnesses To Some Of Facts. Ask Them Also What Kin They Are To Mathis Cook Or His Wife This Information Needed Today For Trial 9 AM Monday January 23rd. Please Wire Reply To Both Questions Day Letter Western Union Collect. Your Reasonable Mileage And Expenses Will Be Paid Send Copy Of Your Reply To My Residence 213 West Curtis Drive Phone 72-2312

"James R Holbird First Asst
County Attorney Courthouse
Oklahoma City

DLR Copy
78631 County Court House County Attorneys Office James
Madera Calif Holbird 1st Asst Co Atty. Crt Hs Ok City
Received; Jan 21 1950 Granville Scanland Co Atty Okla City"

 "Western Union Telegram
 DLR Co Attys
 OFS Mon M

KA 349 OA 298
O. MDAO26 125 D1 Collect * Madera Calif 21 135P—James
R. Holbird. First Asst County Attorney 213 West Curtis Dr Phone
72-2312 Okla City—
Contacted Herman Evans Family Today. Cook Is Uncle By Mar-
riage Of Herman Evans. None Of Family Present At Time Of Kill-
ing. Herman Claims That Cook Was Quarrelsome At Time And That
He And Cook Did Not Get Along. Family States That They Do Not
Know Reason That Killing Took Place. They State That They Nev-
er Knew Of Any Previous Trouble Between Cook And Smith. Mrs.
Cook Stayed With Evans Family After Killing And That She Claims
To Have Been In Back Room At Time Of Shooting And Did Not
Know When Cook Shot Smith. Family Learned Of Shooting From
Quentin Smith. Age About 10 or 12 Who Resides On 6th Street
Near Rose. Who Told Margaret Evans When She Was On Way
To Store—

 W O Justice Madera County Sheriff—
 (15)
 72231D J R Holbird
 Mon
 dlr AM

 LMS
 DA 443P BC
Received:
Jan 23, 1950
Granville Scanland
County Attorney
Oklahoma City, Oklahoma County."

The motion for continuance was overruled, but the alleged telegrams were handed to the court reporter who left them on his desk. After arguments had been concluded at the conclusion of the trial, the jury retired to their room for deliberation. Subsequently they asked the bailiff to bring the exhibits of the case to the jury room for examination. The bailiff inadvertently gathered the two alleged telegrams along with the other exhibits and carried them to the jury room. Several days subsequent to the rendition of the verdict counsel for defendant filed a motion for new trial setting forth, among other alleged errors, that the jury had illegally received evidence out of the courtroom. Attached to the motion for new trial were affidavits from several of the jurors who sat on the case in which they said that the telegrams were read in the jury room and discussed by them before a verdict was reached.

By statute it is provided that a court shall grant a new trial when a verdict has been rendered against a defendant by which his substantial rights have been prejudiced, upon his application in the following cases only:

" * * *

"Second. When the jury have received any evidence out of court, other than that resulting from a view of the premises." 22 O. S. 1941 § 952.

158

In the early case of Waide v. State, 13 Okla. Cr. 165, 162 P. 1139, 1142, the accused was convicted of embezzling funds as guardian which belonged to his ward. At the hearing upon the motion for new trial the defendant showed that the jury had considered a written objection filed by the guardian ad litem to the guardian's report filed by the defendant, which objections contained statements detrimental to the defendant as to the offense charged, which objections had not been placed in evidence in the trial of the case. In disposing of the assignment this court stated:

"While section 5912, Rev. Laws 1910 [22 O. S. 1951 § 893], provides that the jury may have in the trial of a cause such documents as have been received in evidence in the case, certainly it does not authorize the jury to have written statements incriminating the defendant, which have not been put in evidence, and it was therefore improper that the jury had and considered the objection of the guardian ad litem to the report made by the defendant. It may not be improper to add here that prosecuting officers should see that when papers are being delivered to the jury no improper documents are included therein. The said written objection of said guardian ad litem to the report filed by said defendant not having been introduced in evidence in the cause, it was extremely prejudicial to the defendant to be considered by the jury, and in our opinion was sufficient, together with the failure to legally prove the corpus delicti, to entitle him to a new trial, and accordingly the court committed prejudicial error in overruling the defendant's motion for a new trial."

In Thomas v. State, 13 Okla. Cr. 414, 164 P. 995, 998, this court reversed a conviction for murder because the jury improperly received evidence out of court. The alleged improper evidence was contained in a transcript of testimony given at the preliminary examination. This court stated:

"It appears that the entire transcript of the testimony given at the preliminary examination was upon request allowed to be taken to the jury room for the purpose of permitting the jury to read certain portions of such evidence introduced upon the trial both as original and impeaching evidence. While it is not clearly shown that the jury considered or read any of this evidence except such as was introduced upon the trial of this case, it is clearly evident that the opportunity to receive and examine other evidence than that received in court was afforded. This should not be permitted under any circumstances.

"The second subdivision of section 5937, Rev. Laws (1910) [22 O.S. 1951 § 952], makes it ground for new trial for the jury to receive evidence out of court other than that resulting from a view of the premises. Sections 5912 and 5913, Rev. Laws (1910) [22 O.S. 1951 §§ 893, 894], provide:

" 'On retiring for deliberation the jury may take with them the written instructions given by the court, the forms of verdict approved by the court, and all papers which have been received as evidence in the cause, except that they shall take copies of such parts of public records or private documents as ought not, in the opinion of the court, to be taken from the person having them in possession.'

" 'After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called.'

"Had there been a disagreement between jurors as to any testimony introduced other than the documentary evidence, the jury should have been returned into court and the evidence read to them. And where the evidence is written or documentary, and is attached to other such evidence not introduced on the trial, it should be detached from that not introduced before the jury is permitted to take the same to the jury room. The foregoing statutes should be strictly

complied with, as it is a substantial right of the defendant to have the jury kept free from any improper influences while considering its verdict as well as during the entire progress of the trial."

In Ned v. State, 28 Okla. Cr. 419, 231 P. 550, this court held:

"In a criminal prosecution, the verdict of the jury must be found upon evidence produced at the trial in open court, in the presence of the defendant."

At the hearing upon the motion for new trial the prosecuting attorney admitted that the telegrams were improperly delivered to the jury through the inadvertent action of the bailiff, but denied that the telegrams were inconsistent with the evidence, and contended that such action could be no more than harmless error in view of the uncontradicted evidence that the deceased was shot in the back and defendant was given only the low penalty of 20 years imprisonment in the penitentiary. Substantially the same argument is advanced before this court by the Attorney General to sustain the conviction.

As heretofore related, the evidence of the state made out a deliberate case of murder and we are not greatly impressed with the truthfulness of the defense presented. However, the jurors who saw the witnesses in open court were in a much better position to pass upon the weight of the evidence and the credibility of the witnesses than an appellate judge who has only the dead record and not the living trial before him. Upon another trial a jury less inclined to sympathy would probably find the defendant guilty of the crime of murder.

The alleged telegrams were ex parte statements that were never offered nor admitted in evidence during the trial. They contained harmful statements to the defendant because one telegram stated that the defendant was quarrelsome at times and further stated that Evans knew of no previous trouble between Cook and Smith. The telegram was so worded that any person reading it would be forced to conclude that the testimony of defendant and his wife concerning the threat purportedly related to them by Herman Evans was a fabrication.

The defendant has a constitutional right to be confronted by the witnesses against him. Art. 2, § 20, Oklahoma Constitution. Our jury system is founded upon the fundamental proposition that disinterested jurors will hear the evidence in open court, and upon that evidence and that alone, deliberate among themselves until a verdict is reached. For this court to give its approval under one pretense or another to the conveyance to the jury of evidence outside of open court is to open the door to grave abuse and to strike directly at the heart of our jury system.

Solely because these alleged telegrams were delivered to the jury and used by them in their deliberations, the judgment and sentence of the district court of Oklahoma county is reversed and remanded with instructions to again try the defendant on the charge of murder.

BRETT, P. J., and POWELL, J., concur.